FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 08 2009 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
CYNTHIA HINES, on behalf of herself and
others similarly situated,
               Plaintiffs,

               v.                             09 CV 991 (SJ)

                                                MEMORANDUM
                                                AND ORDER

OVERSTOCK.COM, INC.,

               Defendant.
----------------------------------X

APPEARANCES

HARRY I. KATZ, P.C.
61-25 Utopia Parkway
Fresh Meadows, NY 11365
By:   Harry I. Katz
        Victoria L. Weinman
Attorneys for Plaintiff

BRACEWELL & GIULIANI LLP
1177 Avenue of the Americas, 19th Floor
New York, NY 10036
By:   Rachel B. Goldman
        David John Ball
Attorneys for Defendant

JOHNSON, Senior District Judge:

      Plaintiff Cynthia Hines ("Plaintiff" or "Hines") initiated this purported class action pursuant to the Court's diversity jurisdiction, alleging that defendant Overstock.com, Inc.'s ("Defendant" or "Overstock") decision to impose a

1

"restocking fee" amounted to a breach of contract, fraud, and a violation of New York General Business Law sections 349 and 350. (See generally Compl.) Presently before the Court is Defendant's motion to dismiss or stay for arbitration, or alternatively to transfer venue (the "Motion"). For the reasons set forth below, the Motion is DENIED in its entirety.

## BACKGROUND

Overstock is an online, "closeout" retailer. (Compl. ¶ 9.) On or about January 8, 2009, Plaintiff purchased an Electrolux Oxygen 3 Ultra Canister vacuum from Overstock's website. (Id. at ¶ 10.) After receiving the vacuum, Plaintiff returned it to Defendant and was reimbursed the full amount she had paid for it, minus a $30.00 restocking fee. (Id. at ¶¶ 11-12.) Plaintiff claims that she had been advised that she could return the vacuum without incurring any costs and that Defendant never disclosed that a restocking fee would be charged. (Id. at ¶¶ 13-14.)

In support of the Motion, Defendant avers that: "All retail purchases from Overstock are conducted through Overstock's Internet website. When an individual accesses the website, he or she accepts Overstock's terms, conditions and policies, which govern all of Overstock's customer purchases." (Hawkins Aff. ¶ 5.) Overstock's "Terms and Conditions" ("Terms and Conditions") state that "Entering this Site will constitute your acceptance of these Terms and Conditions"

and include a provision that requires that "any dispute relating in any way to your visit to the Site . . . be submitted to confidential arbitration in Salt Lake City, Utah." (Hawkins Aff. Ex. A.)

Plaintiff affirms, however, that she "never had any notice that disputes with Overstock.com require mandatory arbitration in Salt Lake City, Utah." (Hines Aff. ¶ 18.) Plaintiff affirms that when she accessed Overstock's website to purchase the vacuum, she was never made aware of the Terms and Conditions; specifically, Plaintiff avers that: "Because of this lawsuit, I later learned that if you scroll down to the end of the website page or pages, there is in smaller print placed between 'privacy policy' and Overstock.com's registered trademark, the words 'site user terms and conditions*'. I did not scroll down to the end of the page(s) because it was not necessary to do so, as I was directed each step of the way to click on to a bar to take me to the next step to complete the purchase." (Id. at ¶ 17.)

## DISCUSSION

I. Request to Stay or Dismiss for Arbitration

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., provides that that "[i]f any suit or proceedings be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that

3

the issue involved such suit or proceedings is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action." 9 U.S.C. § 3. The caselaw is clear that "[w]hen all of the issues raised in a litigation lie within the scope of an arbitration agreement, courts have the discretion to dismiss the action rather than issue an order directing a stay." Sea Spray Holdings, Ltd. v. Pali Fin. Group, Inc., 269 F. Supp. 2d 356, 366 (S.D.N.Y. 2003).

In deciding a motion to stay or dismiss in favor of arbitration, a court must begin by answering two questions: "(1) whether the parties agreed to arbitrate, and if so, (2) whether the scope of that agreement encompasses the asserted claims." Chelsea Square Textiles, Inc. v. Bombay Dyeing & Mfg. Co., 189 F.3d 289, 294 (2d Cir. 1999). With respect to the first question, the FAA provides that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Court therefore begins by examining whether, as a matter of state law, the underlying arbitration agreement is valid. See Cap Gemini Ernst & Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir. 2003).

In determining which state law controls, the Court applies the choice-of-law rules of the forum state. See id. New York's choice-of-law rules apply a "center of gravity" or "grouping of contacts" approach in contract cases to determine which state has "the most significant relationship to the transaction and the parties," considering "the places of negotiation and performance; the location

4

of the subject matter; and the domicile or place of business of the contracting parties." Zurich Ins. Co. v. Shearson Lehman Hutton, Inc., 84 N.Y.2d 309, 317, (N.Y. 1994) (internal quotation marks and citation omitted).

In the instant case, the parties have not briefed the choice-of-law issue. The Court concludes, however, that under both New York and Utah law, Defendant has not carried its burden of demonstrating the existence of a valid arbitration agreement because Defendant has shown neither that Plaintiff had notice of the Terms and Conditions, nor that a reasonable user of the website would have.

It is a basic tenet of contract law that in order to be binding, a contract requires a "meeting of the minds" and "a manifestation of mutual assent." See, e.g., R.J. Daum Const. Co. v. Child, 247 P.2d 817, 819-20 (Utah 1952); 1-800 Contacts, Inc. v. Weigner, 127 P.3d 1241, 1242-43 (Utah Ct. App. 2005); Express Indus. & Terminal Corp. v. N.Y. Dep't. Transp., 93 N.Y.2d 584, 589 (N.Y. 1999). The making of contracts over the internet "has not fundamentally changed the principles of contract." Register.com, Inc. v. Verio, Inc., 356 F.3d 393, 403 (2d Cir. 2004). On the internet, the primary means of forming a contract are the so-called "clickwrap" (or "click-through") agreements, in which website users typically click an "I agree" box after being presented with a list of terms and conditions of use, and the "browsewrap" agreements, where website terms and conditions of use are posted on the website typically as a hyperlink at the bottom

5

P-049

of the screen. See id. at 428-30. Unlike a clickwrap agreement, a browsewrap agreement "does not require the user to manifest assent to the terms and conditions expressly . . . [a] party instead gives his assent simply by using the website." Southwest Airlines Co. v. Boardfirst, L.L.C., No. 06-CV-0891-B, 2007 WL 483761 at *4 (N.D.Tex. Sept. 12, 2007). In ruling upon the validity of a browsewrap agreement, courts consider primarily "whether a website user has actual or constructive knowledge of a site's terms and conditions prior to using the site." Id. at *5; see also Specht v. Netscape Communications Corp., 306 F.3d 17, 20 (2d Cir. 2002) (finding no notice).

In Specht, the plaintiffs had downloaded free software from the defendant's website; because they did not scroll down the page, they did not see the notice advising site-users to review and agree to the software license agreement's terms prior to downloading. Id. at 23. The Second Circuit held that the plaintiffs were not bound by the license agreement's terms because they "were responding to an offer that did not carry an immediately visible notice of the existence of license terms or require unambiguous manifestation of assent to those terms." Id. at 31; see also Register.com, Inc., 356 F.3d at 402-03 (distinguishing Specht because the site-user conceded it had actual notice of the terms); Motise v. America Online, Inc., 346 F. Supp. 2d 563, 564-65 (S.D.N.Y. 2004) (finding no notice where terms of use were available on website, but not presented to plaintiff).

In the instant case, it is clear that Plaintiff had no actual notice of the Terms and Conditions of Use. (Hines Aff. ¶¶ 17-18.) Defendant has also failed to show that Plaintiff had constructive notice. The Hawkins Affidavit, upon which Defendant relies, conclusorily states that by accessing Overstock's website, an individual accepts Overstock's Terms and Conditions – but, crucially, does not explain how a site-user such as Plaintiff is made aware of the Terms and Conditions. Despite Defendant's assertion that "all customers to Overstock's website are <u>advised</u> of the company's terms and conditions prior to their entry onto the site," (Def. Mem. Law Supp. Def. Mot. to Dismiss ("Def. Mem.") at 6 (emphasis added)), neither the Hawkins Affidavit nor any other evidence submitted by Defendant refute Plaintiff's sworn statement that she was never advised of the Terms and Conditions and could not even see the link to them without scrolling down to the bottom of the screen – an action that was not required to effectuate her purchase. Notably, unlike in other cases where courts have upheld browsewrap agreements, the notice that "Entering this Site will constitute your acceptance of these Terms and Conditions," (Hawkins Aff. Ex. A), was only available within the Terms and Conditions. See Hubbert v. Dell Corp., 835 N.E.2d 113, 121-22 (Ill. App. Ct. 2005) (finding reasonable notice where three of the web pages completed by the plaintiffs contained a statement advising customers of the terms and conditions). Hines therefore lacked notice of the Terms and Conditions because the website did not prompt her to review the Terms

P-049

and Conditions and because the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions. Very little is required to form a contract nowadays – but this alone does not suffice.[1]

II. Request to Transfer to Utah Pursuant to the Forum Selection Clause

Defendant next argues that the Court should transfer the case pursuant to 28 U.S.C. § 1406(a), claiming that the Eastern District is an improper venue for this action because the mandatory forum selection clause in the Terms and Conditions requires the action to be brought in Utah. (Def. Mem. at 5-6.) This argument fails for similar reasons.

The Second Circuit applies a four part test to determine when to dismiss a case based on a forum selection clause; the first part of this test requires the court to determine "whether the [forum selection] clause was reasonably communicated to the party resisting enforcement." Phillips v. Audio Active Ltd., 494 F.3d 378, 383 (2d Cir. 2007). As with the arbitration clause, Defendant simply asserts that all customers on their website are advised of the Terms and Conditions, which include the forum selection clause. (Def. Mem. at 6.) Again, however, Defendant has failed to explain how Plaintiff and its other customers were "advised" of the Terms and Conditions, or to cite a single case that suggests that merely posting

---

[1] As the Court has concluded that there was no valid agreement to arbitrate, it does not address Plaintiff's other arguments concerning the scope of the arbitration agreement and the validity of the class action waiver and confidentiality clauses contained therein.

8

such terms on a different part of a website constitutes reasonable communication of a forum selection clause. Defendant has therefore failed to show that venue is improper in this District because of the forum selection clause.

III.   Request to Transfer on the Basis of *Forum Non Conveniens*

Finally, Defendant argues that, pursuant to 28 U.S.C. § 1404(a) ("Section 1404(a)"), the case should be transferred to Utah based on the *forum non conveniens* doctrine. (Def. Mem. at 7-12.) Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or districts where it might have been brought."[2]  "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 106 (2d Cir. 2006).

In considering such a motion, district courts consider a variety of factors, including "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties." Id. at 106-07 (quoting Albert Fadem Trust v. Duke Energy

---

[2] Plaintiff does not dispute that this action could have been brought in the proposed transferee forum.

9

Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). "There is no rigid formula for balancing these factors and no single one of them is determinative." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). The party seeking the transfer bears "the burden of making a 'clear-cut showing' that transfer is warranted in light of these factors." In re Hanger Orthopedic Group, Inc. Sec. Litig., 418 F. Supp. 2d 164, 167-68 (E.D.N.Y. 2006) (quoting O'Hopp v. ContiFinancial Corp., 88 F. Supp. 2d 31, 34-35 (E.D.N.Y. 2000)).

A plaintiff's choice of forum is entitled to "great weight." D.H. Blair & Co., 462 F.3d at 107. Relying primarily on Quan v. Computer Sciences Corp., No. CV 06-3927, 2008 U.S. Dist. Lexis 1360 at *8-9 (E.D.N.Y. Jan. 8, 2008), Defendant argues that a plaintiff's choice is entitled to less weight in a purported class action. (Def. Mem. at 8-9.) Unlike in Quan, however, where none of the named plaintiffs resided in this District (and two resided in the same district as the defendant), in the instant case, Hines – the only named plaintiff – does reside in this District. (Hines Aff. at ¶ 1.) This factor therefore does not weigh in favor of transfer. Similarly, with respect to the convenience of the parties, transfer is not warranted, as Plaintiff resides in this District. See Quan, 2008 U.S. Dist. Lexis 1360 at *16 ("Residence is the touchstone for party convenience").

"The convenience of witnesses – especially non-party witnesses – is arguably the most important factor in determining whether a transfer is warranted." Id. at *14. Unlike in Quan, here, no non-party witnesses have been

brought to the Court's attention. While Defendant has shown that it will call two Overstock employees who reside in Utah, (Hawkins Aff. At ¶ 11), there is no indication that their testimony will be quantatively or qualitatively different from Plaintiff's. See id. (noting that the court "must not simply compare the number of witnesses," but must also consider the materiality of their anticipated testimony).[3] This fact also does not favor transfer, as one of the parties will be required to travel regardless of whether the trial occurs here or in Utah and there is no indication that such travel will be any more inconvenient to Defendant than to Plaintiff. See Virgin Enterp. v. American Longevity, No. 99 Civ. 9854, 2001 WL 34142402 at *8-9 (S.D.N.Y. Mar. 1, 2001) ("The convenience of the parties does not weigh in favor of transfer where such transfer would merely shift the inconvenience of litigating in a particular forum from one party to the other."). Similarly, with respect to the availability of process for unwilling witnesses, given that Defendant has not identified any non-party witnesses likely to be called, this factor cannot favor transfer.

With respect to the location of relevant documents and other sources of proof, the Court considers that given the nature of Overstock's business and the specific transaction at issue in this case (an online purchase), most if not all of the documents will be readily available electronically. See Quan, 2008 U.S. Dist.

---

[3] Defendant's assertion that "other as-of-yet unidentified Overstock officers, employees and/or representatives may also be identified as witnesses," (Hawkins Aff. ¶ 11), does not influence the Court's decision in this motion. See Virgin Enter. v. American Longevity, No. 99 Civ. 9854, 2001 WL 34142402 at *9 (S.D.N.Y. Mar. 1, 2001) (refusing to consider inconvenience to unnamed witnesses).

11

Lexis 1360 at * 21. This factor also does not suggest that it would inconvenience Defendant to maintain this action in this District.

The locus of operative facts in a breach of contract case considers "where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." Reinhard v. Dow Chemical Co., No. 07 Civ. 3641 (RPP), 2007 WL 2324351, at *6 (S.D.N.Y. Aug. 13, 2007) (quoting Prudential Sec. Inc. v. Norcom Dev., Inc., No. 97 Civ. 6308 (DC), 1998 WL 397889, at *4 (S.D.N.Y. July 16, 1998)). Defendant argues that any alleged breach, misrepresentation, or deception occurred in Overstock's offices in Utah. (Def. Mem. at 11-12.) While this factor is "traditionally an important consideration in the transfer analysis," Quan, 2008 U.S. Dist. Lexis 1360 at *18, it offers little help to Defendant in the instant case, where the transaction at issue occurred entirely online. It is therefore insufficient to tilt the balance in favor of transfer.

Where, as in this action, "disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." Berman v. Informix Corp., 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). While no showing has been made here that litigating this case would impose undue hardship on Plaintiff and this factor is therefore neutral in the Court's analysis, see id., it certainly does not support Defendant's position.

After considering all of the factors discussed above, the Court concludes that transfer is not warranted under the circumstances of this case.

P-049

## CONCLUSION

For the foregoing reasons, the Defendant's Motion is DENIED in its entirety. The parties are directed to contact Magistrate Judge Mann's Chambers in order to proceed expeditiously with discovery.

```
DATED:     September 4, 2009              s/Sterling Johnson, Jr.
           Brooklyn, New York             _____
                                          Sterling Johnson, Jr, U.S.D.J.
```