UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
CYNTHIA HINES, on behalf of herself and
others similarly situated,

                Plaintiffs,

              v.                            09 CV 991 (SJ)

                                        <u>MEMORANDUM</u>
                                        <u>AND ORDER</u>

OVERSTOCK.COM, INC.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

A P P E A R A N C E S

HARRY I. KATZ, P.C.
61-25 Utopia Parkway
Fresh Meadows, NY 11365
By:    Harry I. Katz
        Victoria L. Weinman

KAYE SCHOLER LLP
425 Park Avenue
New York, NY 10022
By:    Peta Gordon
        Myron Kirschbaum
        Angela R. Vicari
*Attorneys for Plaintiff*

CAHILL GODRON & REINDEL LLP
80 Pine Street
New York, NY 10005
By:    Jonathan D. Their
        Krista Friedrich
        Jason M. Hall
        Guillaume Buell
*Attorneys for Defendant*

JOHNSON, Senior District Judge:

Plaintiff Cynthia Hines ("Plaintiff" or "Hines") initiated this putative class action pursuant to the Court's diversity jurisdiction, alleging that defendant Overstock.com, Inc.'s ("Defendant" or "Overstock") decision to impose a "restocking fee" amounted to consumer fraud, unjust enrichment and a violation of various state consumer protection statutes.  (See generally Am. Compl.)  Presently before the Court is Defendant's motion to dismiss (the "Motion").  For the reasons set forth below, the Motion is GRANTED.


BACKGROUND

Overstock is an online, "closeout" retailer.  (Am. Compl. ¶ 1.)  On or about January 8, 2009, Plaintiff purchased an Electrolux Oxygen 3 Ultra Canister vacuum from Overstock's website.  (Id. at ¶ 9.)  After receiving the vacuum, Plaintiff returned it to Defendant and was reimbursed the full amount she had paid for it, minus a $30.00 restocking fee.  (Id. at ¶¶ 13-14.)  Plaintiff claims that she had been advised that she could return the vacuum without incurring any costs and that Defendant never disclosed that a restocking fee would be charged.  (Id. at ¶ 15.)

The Defendant has moved to dismiss the Amended Complaint (the "Complaint") arguing that the Plaintiff lacks class standing and that the Complaint fails to state a claim on the merits.  Specifically, Defendant argues that: (1) the

2

Court lacks subject matter jurisdiction over this action because the total amount in controversy is far below the $5 million jurisdictional minimum specified in the Class Action Fairness Act of 2005 ("CAFA"); (2) Plaintiff fails to adequately plead "intentional deception" under the Utah Consumer Sales Practices Act (the "Utah Act") and it is otherwise time barred; (3) Plaintiff fails to plead its state consumer fraud claims with requisite specificity; and (4) Plaintiff fails to plead her unjust enrichment claim. (Mot. to Dismiss at 1-3.)

Plaintiff argues, however, that she has adequately pled each of her claims and that the Court should adjudicate class certification prior to standing. (Opp'n to Mot. to Dismiss at 9.) In addition, Plaintiff avers that Defendant cites to facts not alleged in the Amended Complaint in support of its jurisdictional argument, which is improper when determining a motion a dismiss. (Id.) Plaintiff also argues that by seeking dismissal of its claim under state consumer protection statutes, Defendant attempts to conflate standing with the class action requirements under Rule 23 of the Federal Rules of Civil Procedure. Plaintiff argues that this is improper and prevailing law supports its position. Finally, Plaintiff argues that at this stage of this case she is not required to plead with particularity under the Utah Act. (Id. at 9-10.)

For the reasons explained below, the Motion is GRANTED.

DISCUSSION

I.   Standard

    a.  Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the allegations in the Complaint as true, and draws all reasonable inferences in the plaintiff's favor.  McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985).  The Court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 566 U.S. 662, 678 (2009).  While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  Id.

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents

4

that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).

b.  Rule 12(b)(1)

Under Rule 12(b)(1), a complaint must be dismissed if a court lacks subject matter jurisdiction.  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court must assume that all of the factual allegations in the complaint are true.  Shipping Fin. Serv. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir. 1998), at 5 (citing Scheuer v. Rhodes, 416 U.S. 232, 236, (1974)).  Unlike a Rule 12(b)(6) motion, in deciding a Rule 12(b)(1) motion, the Court is not limited to the face of the complaint and may consider evidence outside the pleadings to resolve disputed factual issues.  State Emp. Bargaining Agent Coal. v. Rowland, 494 F.3d 71, 77, n. 4 (2d Cir. 2007); (Phifer v. City of N.Y., 289 F.3d 49, 55 (2d Cir. 2002).

c.  Rule 9(b)

"While the rules of pleading in federal court usually require only 'a short and plain statement' of the plaintiff's claim for relief, averments of fraud must be

'stated[d] with particularity.'"   ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98-99 (2d Cir. 2007).  The language of Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action." Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004).  "This pleading constraint serves to provide a defendant with fair notice of a plaintiff's claim, safeguard his reputation from improvident charges of wrongdoing, and protect him against strike suits."  ATSI Commc'ns, 493 F.3d at 99 (citing Rombach, 355 F.3d at 171).

In order to satisfy Rule 9(b), the plaintiff must: "'(1) specify the statement that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'"  Rombach, 355 F.3d at 170 (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)); see also ATSI Commc'ns, 493 F.3d at 99. "Allegations that are conclusory or unsupported by factual assertions are insufficient."  ATSI Commc'ns, 493 F.3d at 99.

This case involves "classic fraud allegations, that is, allegations of misrepresentations and omissions made with intent to defraud . . . ."  In re Ultrafem Inc. Sec. Litig., 91 F. Supp. 2d 678, 691 (S.D.N.Y. 2000).  The gravamen of the Complaint is that

> the $30.00 fee that Overstock charged Plaintiff does not bear any relationship to the cost, if any, incurred by Overstock as a result of the return of the Vacuum, which cost, if any, was significantly less than the $30.00 charged

6

> to Plaintiff.  Thus, the fee charged by Overstock was an undisclosed penalty imposed upon Plaintiff and Overstock's other similarly situated consumers, which creates significant additional revenue for Defendant.

(Compl. ¶ 16.)   Specifically in support of her claims based on fraud, Plaintiff alleges that

> Overstock engaged in deceptive acts or practices . . . by failing to provide its customers with full refunds and failing to clearly indicate its Return Fee Policies by adequate disclosure . . . .

(Id. ¶ 23.)   Elaborating on this theory, Plaintiff further alleges that Defendant "engaged in deception, fraud, false pretense, false promise and misrepresentation, and knowingly concealed, suppressed, or omitted material facts, i.e., its Return Policies", with the intent that its customers rely upon its concealment in connection with the return of a purchased item.  (Id. ¶ 27.)   In addition, Plaintiff alleges that the Return Fees are "deceptively imposed" upon Overstock's customers, which create significant revenue for Defendant and that allowing this to continue would be "unjust and inequitable."  (Id. ¶¶ 29-30.)

II.   Standing

The first issue is whether the Plaintiff has standing to assert the claims alleged in the Complaint.  Defendant contends that Plaintiff lacks standing to sue because during the proposed class period there were two different return policies allegedly in place at Overstock and accordingly Plaintiff purports to represent class

members that were allegedly injured by different policies.  Specifically, Defendant argues that two years prior to Plaintiff being charged the restocking fee, Overstock revised its return policy from one that required mandatory "flat" restocking fees to a policy that involves case-by-case assessments to determine whether a full refund is warranted.  Defendant argues that since Plaintiff is attempting to represent the interests of class members who were allegedly injured by different return policies, Plaintiff lacks standing to sue on behalf of at least some of the proposed class members.

Plaintiff argues that Defendant's standing argument is essentially a class certification argument and it is therefore premature.  In any event, Plaintiff avers, Defendant cites to inapposite law in support of its contention that the standing issue should be adjudicated prior to class certification.  Last, Plaintiff asserts that since the alleged impact of any change in Overstock's policy is not alleged in the Amended Complaint, it is therefore inappropriate for consideration in a motion to dismiss.

For the reasons stated below, the Court agrees with Plaintiff.  Accordingly, the Defendant's motion to dismiss on the ground that Plaintiff lacks standing to assert claims on behalf of the putative class is denied.

a. <u>Applicable Law</u>

A plaintiff must "satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101 (1983). To meet this burden, a plaintiff must show (1) personal injury; (2) causation evidencing a connection between the plaintiff's injury and the defendant's alleged conduct; and (3) redressability, or some non-speculative likelihood that the plaintiff's injury can be remedied by the relief requested of the court. <u>See</u> <u>W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP</u>, 549 F.3d 100, 106-07 (2d Cir. 2008). A putative class representative lacks standing to bring a claim if he or she did not suffer the injury that gives rise to the claim. <u>See</u> <u>Lewis v. Casey</u>, 518 U.S. 343, 358, n. 6 (1996). Where multiple claims are brought, at "least one <u>named</u> plaintiff must have standing to pursue each claim alleged." <u>In re Salomon Analyst Level 3 Litig.</u>, 350 F. Supp. 2d 477, 496 (S.D.N.Y. 2004) (emphasis added); <u>see</u> <u>In re Global Crossing, Ltd. Sec. Litig.</u>, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) (a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim").

b. <u>Application</u>

In light of the applicable law, the Court's analysis herein will only pertain to whether Plaintiff has established that she suffered the injury that gives rise to

9

her individual claim and thus permit her to proceed with this litigation as a potential class representative.  For the reasons stated below, the Court concludes that at this stage Plaintiff has established that she has standing to proceed and thus the Court may analyze the merits of her individual claims.

First, it is undisputed that at least one named plaintiff, in this case Plaintiff, has individually alleged a personal injury.  Specifically, Plaintiff has alleged that she was charged a restocking fee of which she was unaware.  It is also undisputed that Plaintiff has properly alleged that the Defendant's failure to disclose the restocking fee caused her the injury at issue.  Finally, Defendant's do not disagree that by bringing this action, Plaintiff's injury can be remedied by the Court. Therefore, at the most basic level, since Plaintiff has suffered an injury that gives rise to her claims, she individually has standing to proceed as a potential class representative.

Second, courts in this Circuit have held that where "class certification is the source of the potential standing problems," the issue of standing may be deferred on a motion to dismiss.  See In re Grand Theft Auto Video Game Litig., No. 06 MD 1739, 2006 WL 3039993, at *2 (S.D.N.Y. Oct. 25, 2006).  Here, Defendant's allegation that Plaintiff lacks standing because two return policies were allegedly in place during Plaintiff's proposed class period is inconsequential to the Court's analysis in a motion to dismiss her individual claim.  Plaintiff is the "proposed" class representative for a "proposed" class because the class has yet to be certified

by the Court.  Thus, the analysis herein will not pertain to premature issues regarding class certification, but whether Plaintiff can individually establish that she has suffered an injury giving rise to her claim.  (emphasis added).  See In re Grand Theft Auto, 2006 WL 3039993, at *3 (quoting Payton v. Cnty. of Kane, 308 F.3d 673, 680 (7th Cir. 2002) (holding that action is not dismissed for lack of standing because there was no risk that the named plaintiff is attempting "to piggy-back on the injuries of the unnamed class members.").  Since Plaintiff has established that she individually has an injury that gives rise to her claim, the Court will analyze the merits of her claims below.  Therefore, Defendant's motion to dismiss on the ground that Plaintiff lacks standing is denied.

III.   CAFA Jurisdiction

        The next issue is whether the Plaintiff has adequately pled that the amount in controversy meets CAFA's $5 million threshold.  Defendant argues that the Court lacks subject matter jurisdiction because the total amount collected by Overstock from September 2007 through March 2009 time period is far less than the $5 million CAFA threshold.  Plaintiff argues that Defendant cannot unilaterally shorten the class period to defeat jurisdiction.  Specifically, Plaintiff avers that Defendant's reference to an alleged change in Overstock's return policy is not a fact alleged in the Complaint, and accordingly, it is not appropriate for determining a motion to dismiss.

11

For the reasons stated below, the Court holds that Defendant has failed to overcome the rebuttable presumption that the Complaint is a good faith representation of the actual amount in controversy.  Accordingly, Defendant's motion to dismiss on the ground that the Court lacks subject matter jurisdiction is denied.

### a.  Applicable Law

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."  Pressley v. City of New York, No. 11-CV-3234 (SLT) (RER), 2013 WL 145747, at *4-5 (E.D.N.Y. Jan. 14, 2013) (citing Magee v. Nassau Cty. Med. Ctr., 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998).  Thus, the Court will first consider whether it has subject matter jurisdiction over this action before considering whether the Plaintiff has stated a claim.

In this case, subject matter jurisdiction is premised on CAFA.  "CAFA amended the federal diversity jurisdiction statute to confer federal jurisdiction over class actions where: (1) the proposed class contains at least 100 members (the 'numerosity' requirement); (2) minimal diversity exists between the parties, (i.e., where 'any member of a class of plaintiffs is a citizen of a State different from any defendant'); and (3) the aggregate amount in controversy exceeds $5,000,000."

12

<u>Purdue Pharma L.P. v. Kentucky</u>, 704 F.3d 208, 213 (2d Cir. 2013) (<u>quoting</u> 28 U.S.C. §§ 1332(d)(2) – (6)).  The party invoking federal jurisdiction under CAFA has the burden of showing that the case falls within a district court's jurisdiction. <u>Blockbuster, Inc. v. Galeno</u>, 472 F.3d 53, 58 (2d Cir. 2006); <u>see</u> <u>also</u> <u>Makarova v. United States</u>, 201 F.3d 110, 113 (2d Cir. 2000) ("A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.").  Plaintiffs "must show that it appears to a 'reasonable probability' that the aggregate claims of the plaintiff class are in excess of $5 million."  <u>See</u> <u>Blockbuster</u>, 472 F.3d at 58 (<u>citing</u> <u>Mehlenbacher v. Akzo Nobel Salt, Inc.</u>, 216 F.3d 291, 296 (2d Cir. 2000)).

However, "[o]n a motion to dismiss challenging the sufficiency of the amount in controversy, the sum claimed by the plaintiff ordinarily controls, so long as it is claimed in good faith."  <u>Stengel v. Black</u>, No. 03 Civ 0495 (GEL), 2004 WL 1933612, at *1 (S.D.N.Y. Aug. 30, 2004) (<u>citing</u> <u>St. Paul Mercury Indem., Co. v. Red Cab Co.</u>, 303 U.S. 283, 289 (1938)); <u>see</u> <u>also</u> <u>Cappuccitti v. DirecTV, Inc.</u>, 623 F.3d 1118, 1122, n. 8 (11th Cir. 2010) (holding in an action brought under CAFA that "[w]e assume that the sum claimed here by [plaintiff] was made in good faith, and it therefore controls.").  "A suit may not be dismissed for lack of the jurisdictional amount in controversy unless it appears 'to a legal certainty' that the plaintiff cannot recover the amount claimed."  <u>Stengel</u>, 2004 WL 1933612, at *1 (<u>quoting</u> <u>St. Paul</u>, 3030 U.S. at 289); <u>see</u> <u>also</u> <u>Aros v. United</u>

Rentals, Inc., No. 3:10-CV-73(JCH), 2011 WL 1647471, at *2 (D. Conn. Apr. 25, 2011) (in a class action under CAFA, noting that defendant "has not presented any argument to demonstrate to a legal certainty that the plaintiff could not recover the amount alleged").  "'[T]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.  If the right of recovery is uncertain, the doubt should be resolved . . . in favor of the subjective good faith of the plaintiff.'"  Stengel, 2004 WL 1933612, at *1 (quoting Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co., 93 F.3d 1064, 1070 (2d Cir. 1996) (citations omitted)).

Courts in this Circuit "recognize a 'rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" Colavito v. New York Organ Donor Network, 438 F.3d 214, 221 (2d Cir. 2006) (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)).  "In order to rebut this presumption, the defendant must show that the complaint 'was so patently deficient as to reflect to a legal certainty that [the plaintiff] could not recover the amount alleged or that the damages alleged were feigned to satisfy jurisdictional minimums.'"Id.

      b.  Application

The only element of CAFA that Defendant invokes in the Motion is Plaintiff's alleged failure to plead that the aggregate amount in controversy

exceeds $5 million.  In support of this contention, Defendant cites to an affidavit by a Senior Vice President at Overstock which was submitted in support of its motion to dismiss.  Specifically, the affiant states that from the inception of Overstock's "partial refund" policy in September 2007 through March 2009, "the total amount of all fees charged in connection with items returned to Overstock, other than standard shipping fees, was $1,529,799.98."  (<u>See</u> Dkt. No. 80 at ¶¶ 3-5.)  Defendant argues that this statement proves that the total amount in controversy is far below CAFA's threshold amount in controversy.

Under prevailing law, Plaintiff is only required to show that there is a "reasonable probability" that the aggregate claims are in excess of $5 million.  <u>See</u> <u>Blockbuster</u>, 472 F.3d at 58 (<u>citing</u> <u>Mehlenbacher v. Akzo Nobel Salt, Inc.</u>, 216 F.3d 291, 296 (2d Cir. 2000)).  The Court holds that the Plaintiff has adequately met this burden.  Thus, the burden shifts to Defendant who must demonstrate "to a legal certainty" that the plaintiff cannot recover the amount claimed.  <u>Stengel</u>, 2004 WL 1933612, at *1.  This is a difficult burden to overcome since the Second Circuit has held that "the legal impossibility of recovery must be so certain, so as to virtually negate plaintiff's good faith in bringing the claim."  <u>Chase Manhattan Bank, N.A.</u>, 93 F.3d at 1070.

Defendant's bald assertion fails to meet this standard.  Even taking into consideration the statements made by Defendant's Senior Vice President regarding the aggregate amount in controversy, the Court is not convinced that Defendant

has established to a legal certainty that the plaintiff could not recover the amount alleged.  Accordingly, the Court finds that Defendant has failed to overcome the rebuttable presumption that the Complaint is a good faith representation of the actual amount in controversy.  Therefore, Defendant's motion to dismiss on the ground that the Court lacks subject matter jurisdiction is denied.  Since the Defendant's jurisdictional argument fails, the merits of Plaintiff's claims will be analyzed in turn.

IV.   Utah Consumer Protection Act

In her first cause of action, Plaintiff alleges that Defendant engaged in consumer fraud in violation of the Utah Act.  As such, the issues are whether the Complaint adequately pled her consumer fraud claim under the Utah Act and whether the claim is time barred.  The first issue turn on whether the Complaint alleges with requisite particularity that Defendant "knowingly or intentionally" violated the Utah Act.

Defendant argues that Plaintiff fails to state a claim under the Utah Act and it should therefore be dismissed.  Specifically, defendant avers that Federal Rule of Civil Procedure 9(b) requires that Plaintiff plead with specificity that Overstock "knowingly or intentionally" violated the Utah Act.  In addition, Defendant argues that claims under the Utah Act must be brought within two years after the occurrence of a violation under the Act, and accordingly, any putative class claims

16

under the Utah Act that are based on events prior to March 10, 2007 are time barred.  Contrarily, Plaintiff argues that claims brought under consumer fraud statutes like the Utah Act are not subject to the pleading-with-particularity requirements of Rule 9(b).  The Court notes that the Plaintiff makes no argument in opposition to the statute of limitations argument.

### a.  Applicable Law

The Utah Act "generally prohibits deceptive or unconscionable acts or practices by a supplier in connection with a consumer transaction."  Carlie v. Morgan, 922 P.2d 1, 5-6 (Utah 1996) (internal quotation marks omitted); see also Utah Code Ann. § 13-11-2(2).  The statute broadly defines a "consumer transaction" as:

> a sale, lease, assignment, award by chance, or other written or oral transfer or disposition of goods, services, or other property, both tangible and intangible (except securities and insurance) to, or apparently to, a person for . . . primarily personal, family, or household purposes . . . .

Utah Code Ann. § 13-11-3(2)(a).  A supplier who violates the Utah Act can be liable to the consumer for damages and court costs.  Id. § 13-11-19(2).  In her first cause of action, Plaintiff alleges that Defendant engaged in consumer fraud in violation of the Utah Act.  Plaintiff cites to Section 152-11-10 of the Utah Act as the basis upon which she brings her consumer fraud claim.  Utah Admin. Code § 152-11-10.  A deceptive act or practice violates the Utah Act if it is committed

17

"knowingly or intentionally."  Utah Code Ann. § 13-11-4(2) (emphasis added); see also Utah Code Ann. § 13-11-4(2) (2009); Wade v. Jobe, 818 P.2d 1006, 1016 (Utah 1991).  Other courts have held and this Court agrees that claims brought under the Utah Act must be plead with particularity, as required by Federal Rule of Civil Procedure 9(b).  See Jackson v. Philip Morris Inc., 46 F. Supp. 2d 1217, 1222 (D. Utah 1998) (holding that "plaintiffs' allegations of misrepresentation and deception places its UCSPA claim within the Rule 9(b) categorization of fraud and therefore subject to the requirement of pleading with particularity.")


     b.  Application

Here the parties do not dispute that the transaction at issue qualifies as a "consumer transaction" under the Utah Act.  As such, the Court's analysis will largely focus on whether Plaintiff has adequately alleged that Defendant has violated the Utah Act by engaging in deceptive acts or practices.

In her opposition to the Motion, Plaintiff point us to Iadanza v. Mather, 820 F. Supp. 1371, 1378 (D. Utah 1993) and its reference to Section 13-11-2 of the Utah Act, which provides that the Utah Act "shall be construed liberally to promote" policies "to protect consumers from suppliers who commit deceptive and unconscionable sales practices . . . [and] to encourage the development of fair consumer sales practices."  (Pl.'s Opp'n to Mot. to Dismiss at p. 23.) (citing Iadanza, 820 F. Supp. at 1378).  Plaintiff argues that a narrow construction of the

Utah Act would "not only contravene this expressed legislative intent, but also might result in a greater incidence of fraudulent and unfair sales practices . . . ." Id.

However, the plain language of the Utah Act specifically identifies intentional or knowing behavior as an element of a deceptive act or practice, making it inappropriate to construe the statute in the manner Plaintiff suggests. See Utah Code Ann. § 13-11-4(2).   Furthermore, Utah courts and courts employing Utah law have consistently recognized intent as an element of a claim brought under the Utah Act.  See Reed v. AFNI, Inc., No. 09-CV-459 (TS), 2011 WL 112430, at *3 (D. Utah Jan. 13, 2011) (rejecting a Utah Act claim in part due to plaintiff's failure to present evidence of intent); See Kee v. R-G Crown Bank, 656 F. Supp. 2d 1348, 1356 (D. Utah 2009) (holding that plaintiff's claim under the Utah Consumer Sales Practice Act "fails as a matter of law because Plaintiff has not sufficiently pled a required element of the statute, that Defendants committed a deceptive act or practice "knowingly or intentionally.""); Rawson v. Conover, 20 P.3d 876 (Utah 2001) (quoting the language of the Utah Act and observing that it "requires that the supplier knowingly or intentionally deceive the consumer"); State ex rel. Div. of Consumer Prot. v. GAF Corp., 760 P.2d 310, 313 (Utah 1998) (observing that the original version of the Utah Act, which "contained no intent requirement," was amended in 1985 "to require 'intent to deceive' on the part of a supplier before a deceptive trade practice can be found") (quoting Utah

Code Ann. § 13-11-4(2) (Supp. 1988) (current version at <u>id.</u> (Supp. 2011))).  Thus, in order to establish a violation of the Utah Act, the Plaintiff is required to plead with particularity that Defendant knowingly and intentionally engaged in deceptive acts or practices.

 After a review of the Plaintiff's allegations, the Court finds that the Complaint fails to plead with particularity that Overstock knowingly and intentionally engaged in the deceptive trade practice at issue, specifically, that Overstock knowingly and intentionally withheld its Return Fees policy from Plaintiff and similarly situated customers.  In applying Rule 9(b) to consumer fraud claims under the Utah Act, the Utah Supreme Court reasoned that "fraud" is a term of uncertain meaning which must be "fleshed out by elaboration and by consideration of the context in which they are used."  <u>Jackson v. Philip Morris Inc.</u>, 46 F. Supp. 2d 1217, 1222 (D. Utah 1998) (<u>citing</u> <u>Williams v. State Farm Ins. Co.</u>, 656 P.2d 966, 972 (Utah 1982)).  The Utah Supreme Court construed Rule 9(b) to require "allegation[s] of the substance of the acts constituting the alleged wrong."  <u>Id.</u>  As such, the Plaintiff must plead with particularity that Defendant knowingly and intentionally withheld its Return Fee policy from Plaintiff.  The Complaint is completely devoid of any such allegation.  Moreover, Plaintiff alleges that under the Utah Act it is a deceptive act if a supplier "refuse[s] to give a refund in connection with a customer transaction . . . ."  (Compl. ¶ 22.)  Similarly, there is no allegation in the Complaint that Defendant refused to give Plaintiff a

refund of the restocking fee at issue.  In the absence of these crucial allegations, the Court can only reach one conclusion: that Plaintiff has failed to plead her Utah consumer fraud claim with the specificity as required by Rule 9(b).  Accordingly, Defendant's motion to dismiss the Utah consumer fraud claim is granted.

V.    New York Deceptive Practices Claim

In her second cause of action, Plaintiff alleges that Defendant violated the consumer protection statutes of nineteen different states.[1]  As such, the next issue is whether the Plaintiff has adequately pled her claim under New York's consumer protection law ("Section 349") and whether the claim is time barred.

For the reasons stated below, the Court holds that Plaintiff has failed to plead her Section 349 claim.  Accordingly, Defendant's motion to dismiss the Section 349 claim is granted.

a.    Applicable Law

New York General Business Law § 349 ("Section 349") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and allows any person injured by a violation of

---

[1] The Court's analysis herein solely pertains to whether Plaintiff has adequately pled her individual claim.  Since Defendant is a Utah resident and Plaintiff resides in New York, the consumer protection statutes relevant to Plaintiff's individual claim are Utah and New York.  As stated, Plaintiff fails to state a claim under the Utah Act.  Accordingly, in its discussion of the second cause of action, the Court elects to limit its analysis to whether Plaintiff has adequately alleged a claim under New York's consumer protection statute.

the section to recover "actual damages or fifty dollars, whichever is greater," permitting the court to treble the damages up to $1,000.  N.Y. Gen. Bus. Law § 349(a), (h).  To successfully assert a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered an injury as a result of the allegedly deceptive act or practice."  Koch v. Acker, Merrall & Condit Co., 18 N.Y.3d 940, 941 (N.Y. 2012).  In the Motion, Defendant does not dispute whether the conduct at issue here constitutes "consumer-oriented conduct."  See Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (N.Y. 1995) (requiring that defendant's "acts or practices have a broader impact on consumers at large").  The only element of the claim that is at issue between the parties is whether Defendant's conduct is materially misleading.

      b.  <u>Application</u>

          i.  <u>Materially Misleading</u>

In order for Defendant's conduct to be "materially misleading" under Section 349, the alleged representations must satisfy the objective test of being "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Gaidon v. Guardian Life Ins. Co. of Am., 94 N.Y.2d 330, 344 (N.Y. 1999) (internal quotation marks omitted); accord Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 126 (2d Cir. 2007).  New York courts have dismissed claims

for having failed to satisfy this element where a defendant fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to the plaintiff. See, e.g., Shovak v. Long Island Comm. Bank, 858 N.Y.S.2d 660, 662-63 (N.Y. App. Div. 2008) (finding no materially misleading statement where yield spread premium "was fully disclosed to the plaintiff"); Lum v. New Century Mortg. Corp., 800 N.Y.S.2d 408, 410 (N.Y. App. Div. 2005) (same); Zuckerman v. BMG Direct Mktg., Inc., 737 N.Y.S.2d 14, 15 (N.Y. App. Div. 2002) (holding that shipping and handling fees were not deceptive where amounts were disclosed); Sands v. Ticketmaster-New York, 616 N.Y.S.2d 362, 363 (N.Y. App. Div. 1994) (finding that allegedly excessive ticket fees were not materially misleading where those fees were fully disclosed prior to the sale of the tickets).

Here, the gravamen of Plaintiff's Section 349 claim is that Defendant's failure to disclose that she and others would be charged a fee for returning merchandise is deceptive or materially misleading.  Specifically, Plaintiff alleges that while purchasing the vacuum cleaner from Defendant, "[a]djacent to the total price, the Website featured a bar entitled 'continue to checkout.'"  (Compl. ¶ 9.) After clicking on the "continue to checkout" button, Plaintiff was directed to the final order page, where she "finalized her order for the Vacuum."  (Id.)  It is Plaintiff's contention that at no point during the ordering process was the "Return Fee" disclosed to her and the first she learned of it was when she received an email notice from Defendant on February 18, 2009.  (Compl. ¶ 14.)

The facts alleged do not make a facially plausible claim.  The Court's analysis as to whether the alleged omission of the "Return Fee" was "materially misleading" does not hinge on what this Plaintiff reviewed or didn't review, but on whether the omission is likely to mislead a reasonable consumer acting reasonably under the circumstances.  Gaidon, 94 N.Y.2d at 344.  It is the Court's finding that a reasonable consumer would not have simply continued to finalizing his or her order without first reviewing the relevant website for the vendor's return policy. Any consumer who failed to do so appears to have assumed the risk of such a cost in the event that the merchandise is returned.  Plaintiff states that adjacent to the final price was a button titled "continue to checkout", as if to suggest that this was her only option at this stage of the purchase process.  She fails to plausibly plead that the website was absolutely devoid of any additional buttons or bars that would delineate Overstock's return policy.  See L-7 Designs, Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011) ("Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable") (emphasis added).

Here, Plaintiff has failed to plausibly plead her Section 349 claim, and specifically, has failed to establish that Defendant's alleged conduct was "materially misleading."  The Court's objective analysis concludes that the alleged

24

omission would not likely "mislead a reasonable consumer acting reasonably under the circumstances." <u>Gaidon</u>, 94 N.Y.2d at 344.

As such, the Court concludes that Plaintiff has failed to plead the second prong of her Section 349 claim. Accordingly, Defendant's motion to dismiss the Section 349 claim is granted.

VI. <u>Unjust Enrichment Claim</u>

a. <u>Applicable Law</u>

In her third and final cause of action, Plaintiff alleges a claim of unjust enrichment. However, she brings this claim without specifying the law pursuant to which the claim is alleged. Since Plaintiff is a New York resident, for purposes of the instant analysis, the Court will assume that the unjust enrichment claim is alleged under New York's common law. As such, the final issue is whether the Plaintiff has adequately pled her unjust enrichment claim under New York's common law.

Federal Rule of Civil Procedure 9(b)'s particularity requirements apply to Plaintiff's unjust enrichment claim. <u>Sgaliordich v. Lloyd's Asset Mgmt.</u>, 10-CV-03669 (ERK), 2012 WL 4327283, at *5 (E.D.N.Y. Sept. 20, 2012) (noting that a claim of unjust enrichment "must be pled with specificity when the underlying acts are allegedly fraudulent") (<u>quoting</u> <u>Silverman Partners, L.P. v. First Bank</u>, 687 F.

25

Supp. 2d 269, 288 (E.D.N.Y. 2010));  Welch v. TD Ameritrade Holding Corp.,

No. 07-CV-6904 (RJS), 2009 WL 2356131, at *21 (S.D.N.Y. July 27, 2009)

(holding that Rule 9(b) applied to unjust enrichment claim premised on alleged

fraudulent acts).

      "An unjust enrichment claim is rooted in the 'equitable principle that a

person shall not be allowed to enrich himself unjustly at the expense of another.'"

Georgia Malone & Co. v. Rieder, 19 N.Y.3d 511, 516 (N.Y. 2012).  According to

the New York Court of Appeals, "unjust enrichment is not a catchall cause of

action to be used when others fail.  It is available only in unusual situations when,

though the defendant has not breached a contract nor committed a recognized tort,

circumstances create an equitable obligation running from the defendant to the

plaintiff.  Typical cases are those in which the defendant, though guilty of no

wrongdoing, has received money to which he or she is not entitled."  Corsello v.

Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (N.Y. 2012); see also Broder v.

Cablevision Sys. Corp., 418 F.3d 187, 203 (2d Cir. 2005) ("When a plaintiff does

not possess a private right of action under a particular statute, and does not allege

any actionable wrongs independent of the requirements of the statute, a claim[] for

. . . unjust enrichment [is] properly dismissed as an effort to circumvent the

legislative preclusion of private lawsuits for violation of the statute." (internal

quotation marks omitted)).

In order to adequately plead an unjust enrichment claim, the plaintiff must allege that "(1) the other party was enriched, (2) at [her] expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." Georgia Malone & Co., 19 N.Y.3d at 516.

       b.  Application

Plaintiff alleges that "Overstock charged Plaintiff and each of the members of the Class a Return Fee in connection with his or her return of an item to Overstock . . . [and] [i]t would be unjust and inequitable to permit Overstock to retain the Return Fees it wrongfully and deceptively secured from Plaintiff and the other members of the Class."  (Compl. ¶¶ 29-30.)  Although ordinarily such allegations may survive a motion to dismiss, here because the Plaintiff's unjust enrichment claim is premised on fraud, Rule 9(b)'s particularity requirements control.  Plaintiff fails to provide any factual basis for her conclusory allegation that "[i]t would be unjust and inequitable to permit Overstock to retain the Return Fees it wrongfully and deceptively secured from Plaintiff and other members of the Class."  (Compl. ¶ 30.)  The Plaintiff fails to establish with requisite particularity why the Defendant was "enriched" and relies on mere speculation to assert her claim.  See Gurvey v. Cowan, Liebowitz & Latman, PC, No. 06 Civ. 1202 (BSJ), 2009 WL 1117278, at *8 (S.D.N.Y. Apr. 24, 2009) ("Plaintiff has provided only assertion and speculation as to the benefit that was taken from her

27

by [the] [d]efendants.  Even under the low threshold that plaintiffs must meet under Rule 12(b)(6), the unjust enrichment claim must be dismissed . . . .").

The weakness of this claim is only further compounded by the fact that Plaintiff failed to set forth the law under which she brings the unjust enrichment claim.  In response to this valid assertion by Defendant, Plaintiff argues that "courts have regularly recognized that . . . the variations in unjust enrichment law across the 50 states may not create any real substantive differences."  (Pl.'s Opp'n to Mot. to Dismiss at p. 30.) (internal citations omitted).  Instead of setting forth the relevant law, Plaintiff simply delineates the elements of the cause of action without providing any factual support.  Such "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.  Iqbal, 556 U.S. at 678.  Additionally, the Court finds persuasive the authority cited to by Defendant which stands for the proposition that the failure to cite to the law of a particular state in alleging common law claims deems them so vague that defendant cannot reasonably prepare a response.  "In the absence of any controlling authority, the Court cannot simply presume that unjust enrichment claims are substantially identical" across the country.  Sergeants Benev. Ass'n Health and Welfare Fund v. Sanofi-Aventis U.S. LLP, No. 08-CV-0179 (SLT)(RER), 2012 WL 4336218, at *7 (E.D.N.Y. Sept. 17, 2012) (citing  In re Wellbutrin XL Antitrust Litigation, 260 F.R.D. 143, 167 (E.D. Pa. 2009) (dismissing plaintiffs' unjust enrichment claims for failing to

provide "any basis in law" in the amended complaint or "link their claim to the law of any particular state"); see Young v. Wells Fargo & Co., 671 F. Supp. 2d 1006, 1016-17 (S.D. Iowa 2009) (finding that "[w]ithout reference to the law of any particular state," common law claims including an unjust enrichment claim were "so vague that [defendant] cannot reasonable prepare a response").

Plaintiff's fails to adequately state a claim for unjust enrichment under Rule 8(a)'s notice pleading standard, let alone the more stringent standard under Rule 9(b).   Accordingly, Defendant's motion to dismiss the unjust enrichment claim is granted.


## CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is granted.


DATED:        August 19, 2013              _____s/_____
              Brooklyn, New York           Sterling Johnson, Jr, U.S.D.J.